WILLIAM E. P. ANDERSON AND OTHERS, AS EXECUTORS OF CRITTENDEN. H. C. ANDERSON, DECEASED, APPELLANTS, *v.* THE DUNDEE STATE BANK, RESPONDENT.

*Bank draft issued to a stranger payable to a name given by him as his own — liability of the bank to an innocent purchaser for value of the draft indorsed by the person to whom it was issued — evidence of the signature.*

When a bank issues to an entire stranger, and puts in circulation, a draft or bill of exchange, payable to the order of a name inserted therein, relying simply and only on the word of such stranger that that is his name, and under circumstances calculated to excite in the mind of a cautious banker suspicions as to the *bona*

*fides* of the transaction, and the person to whom the draft is so issued indorses thereon the name so inserted therein, and negotiates it to an innocent purchaser for value, the bank of issue is liable thereon to such innocent purchaser, and it makes no difference whether the name so indorsed is the true name of the person to whom the draft was issued or an assumed name.

On the trial of an action against a bank brought to recover the amount of a draft issued by it, payable to the order of "John C. Peck," and which had been cashed by the plaintiff with the name "John C. Peck" indorsed on it, evidence was given tending to show that a check, purporting to be drawn on another bank, the names of both maker and payee of which were not connected with the suit, but which purported to be indorsed by the payee named therein, followed by the indorsement, "John C. Peck," had been presented to the defendant bank, nad taken by it in payment for the draft in suit, on the assurance of the person presenting it that he was John C. Peck.

Thereafter the plaintiff offered in evidence the signature of John C. Peck upon the check, and it was received as an exhibit, thereupon an expert was called, and, without objection, was allowed to testify, after comparing the signature upon the draft in suit with that upon the check, that they were written by the same person, and the draft and its indorsement were offered and received in evidence without objection; thereafter the defendant used the check, as in evidence, for the purpose of proving that the name of the maker and payee thereof were forgeries, but did not offer any evidence to negative the plaintiff's proof as to Peck's signature upon the check and draft.

*Held*, that this evidence established the controlling fact that the person to whose order the defendant made the draft in suit payable indorsed it.

APPEAL by the plaintiffs, William E. P. Anderson and others, executors, etc., from an order of the Supreme Court, entered in the office of the clerk of the county of Yates on the 1st day of December, 1891, denying the plaintiffs' motion for a new trial, on the minutes, after the direction of a verdict for the defendant, at the Yates County Circuit, in an action brought to recover the amount of a bill of exchange made by the defendant.

*John Gillette*, for the appellants.

*Briggs & Sunderlin*, for the respondent.

LEWIS, J.:

The defendant is a banking association, organized under the laws of the State of New York, doing business at the village of Dundee, in the county of Yates. On the 9th day of February, 1885, the defendant made and delivered to one John C. Peck their bill of exchange in writing, dated on that day, and directed to the Importers

and Traders' National Bank of New York, and thereby required said bank to pay to the order of John C. Peck $300. On the 23d day of February, 1885, the draft was presented at the banking-house of the testator, Anderson, with the indorsement of the name John C. Peck thereon, by a man who represented himself to be James Bell. It was purchased for full value by the banking-house of Anderson, and was thereafter and on the 27th day of February, 1885, presented to the Importers and Traders' National Bank for payment. Payment was demanded, which was refused, and the said draft was then and there duly protested for non-payment, with due notice to the defendant, and this action was thereupon brought to recover the amount of the draft. The defendant defends and says that John C. Peck presented and delivered to it a check purporting to be made and drawn by one Reed, bearing date the 7th day of February, 1885, on the Geneva National Bank, payable to Jones & Ayres, or order, for the sum of $965, which appeared to be indorsed by the payees thereof, and that the defendant paid to said Peck therefor, at his request, the draft in suit and $664 in currency; that the said Peck, to induce defendants to take and accept the same, and to issue the draft therefor, falsely and fraudulently stated and represented to the defendant that the check was genuine, when it was, in fact, with its indorsements, a forgery and of no value.

We assume, in deciding this appeal, that John C. Peck presented the forged check to the defendant, and that the defendant issued the draft in suit to him payable to his order. Both the complaint and answer so state the facts to be. The defendant's cashier, it is true, testified that he had learned since that the person who presented the forged check was not John C. Peck. How or when or where he got the information he does not state. This evidence cannot avail to contradict the admissions in the pleadings. When Peck presented the forged check to the defendant the signature "John C. Peck" was indorsed upon it. Defendant's cashier so testifies, and he is not contradicted. The draft was presented to the plaintiff by a person who was introduced to him by one of his customers as James Bell. When so presented the name John C. Peck was indorsed upon it, and the person presenting it then and there wrote the name of James Bell upon the draft under the name of Peck, and the plaintiff purchased the same paying full value therefor in

due course of business. The indorsement of John C. Peck upon the check and upon the draft, and the name of James Bell written as aforesaid upon the draft were all in the same handwriting, so the expert witness, Hoyt, testified without objection, and he is not contradicted. If we should assume that the person who presented the forged check to the defendant and obtained the draft did not give his true name to the defendant to be inserted as payee, but directed an assumed name to be inserted and thereafter indorsed that name upon the draft, the draft when so indorsed became negotiable and would pass by mere delivery to an innocent holder for value. The person who presented the check and procured the draft was a stranger to defendant. He was not required to be identified. The defendant consented to issue and put in circulation the draft, payable to the order of John C. Peck, relying simply and only upon the word of an entire stranger that that was his name, and, under circumstances, as appears from the testimony of the defendant's cashier, somewhat calculated to excite in the mind of a cautious banker, suspicions as to the *bona fides* of the transaction. It being shown, as we have seen, that the same person wrote all three of the indorsements, a *prima facie* case was made that the person who obtained the draft was the same person who sold it to the plaintiff. While, under the evidence, we may be left in doubt as to the true name of the person who obtained the draft, it is not disputed that he informed the defendant that his name was John C. Peck, and that the defendant issued the draft with that name as payee. If it was not his true name it was the name he then assumed, and we are unable to see that it concerns the defendant whether it was his true name or an assumed name, if it be shown that he indorsed the name he had chosen upon the draft and negotiated it to an innocent purchaser for value. (*Brown v. Butchers and Drovers' Bank*, 6 Hill, 443; *David v. Williamsburgh Ins. Co.*, 83 N. Y., 265; *McDuffie v. Clark*, 39 Hun, 166.) "Parties sometimes adopt and use ficticious names as their own, and when there is a real party in existence who uses a ficticious name as descriptive of and with intent to bind himself, it is the same in law as if it were his real name, and he may be sued by the holder and declared against as having contracted by such adopted name." (Daniel on Negotiable Instruments [3d ed.], vol. 1, § 141.) " When the payee's name (to a draft) is fictitious the acceptor is not

concerned, for the reason that the drawer has directed him to pay the money to the order of that name, and if it be thereon indorsed by the drawer or by the holder, he would fulfill that direction and discharge the debt." (Id., Vol. 1, § 138.)

In Chalmer on Bills and Notes (by Benjamin), page 144, the text states the doctrine, citing a number of authorities to sustain it, that where B, at the request of X, makes a note payable to C's order; C is a fictitious person, but B does not know this. X indorses the note in C's name, and it is negotiated to D, a *bona fide* holder for value without notice. D can sue B.

Had Peck paid full value for the draft, and caused to be inserted, as payee, an assumed name, and indorsed such assumed name on the draft, and sold it, under like circumstances, to the plaintiff, it would not be contended but that the defendant would be liable upon the draft. This is not a case of a draft payable to a fictitious person to the knowledge of the drawer. In such a case the draft can be treated as payable to bearer. Here, in order to become negotiable, the indorsement of the name designated as payee was requisite; but it was not essential that the name was the one by which the payee was commonly known. If a payee adopts an assumed name, and indorses such assumed name upon a draft, it is not a writing purporting to be the act of another within the meaning of the provisions of the Penal Code. It is simply a case of using an assumed name without any design of defrauding the payee. But, as we have seen under the pleadings and proof, the draft appears to have been issued by the defendant to John C. Peck, as payee, and if his name was duly indorsed upon it when presented for discount to the plaintiff, the plaintiff, being an innocent purchaser for value, got good title to the draft, and was entitled to recover thereon against the defendant.

The vital and controlling question is, did the person who procured the draft of the defendant indorse the name "John C. Peck" upon it. There was no direct evidence of the genuineness of the indorsement upon the draft, but if it was proven that the name John C. Peck upon the back of the check was in the handwriting of Peck, so as to justify its use as a standard of comparison, then the testimony of the expert Hoyt proved the genuineness of the indorsement on the draft.

HUN—VOL. LXVI      78

By presenting the check, with his name upon it, and stating to the cashier that his name was John C. Peck, he conceded it to be his genuine signature, and was thereby estopped from thereafter claiming that it was a forgery.

The defendant, seeing the check so indorsed, and being assured by the person presenting it that his name was John C. Peck, accepted it and indorsed it to the Geneva National Bank, the drawee, for payment. After this evidence was in, the record states: "The plaintiff offered in evidence the signature of John C. Peck upon the back of the check of February seventh. Identified by the witness; received, marked 'Plaintiff's Exhibit No. 2.'" Thereupon the expert Hoyt was called and was, without objection, allowed to testify, after comparing the signature upon the draft with the signature upon the check, that they were written by the same person; and the draft, with its indorsement, and the certificate of protest attached, were offered and received in evidence without objection.

The defendant, later in the trial, used the check, as in evidence, for the purpose of proving that the name of the maker and payee were forgeries, but did not offer any evidence to negative the plaintiff's proof as to Peck's signature upon the check and draft.

It must be held that the proof established the controlling fact, that the person to whose order the defendant made the draft payable indorsed it, and that the plaintiff, in good faith, took it and paid full value for it.

If these views are correct, it follows that it was error to direct a verdict for the defendant, and the order appealed from should be reversed and the verdict set aside and a new trial granted, with costs to abide the event.

DWIGHT, P J., and MACOMBER, J., concurred.

Order appealed from reversed and a new trial granted, with costs to abide the event.